**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VINCENT LOWMAN,

                              Plaintiff,

        - v -                                      Civ. No. 9:06-CV-422
                                                         (LEK/RFT)

KENNETH PERLMAN, *Superintendent of Mid-State*
*Correctional Facility*; GLENN GOORD, *Commissioner of*
*New York State Department of Correctional Services;*
DR. RAMINENI,[1] *Director of Administrator Health Services*,

                              Defendants.

**APPEARANCES:**                                 **OF COUNSEL:**

VINCENT LOWMAN
Plaintiff, *Pro Se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, N.Y. 13403

HON. ANDREW M. CUOMO                    STEPHEN H. SCHWARTZ, ESQ.
Attorney General for the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, N.Y. 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

*Pro se* Plaintiff Vincent Lowman brings this civil rights action, pursuant to 42 U.S.C. § 1983, asserting that the Defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights under the Eighth Amendment. Dkt. No. 1, Compl. Specifically, Plaintiff claims that the treatment and medication he was receiving at Woodbourne Correctional Facility

---

[1] The Complaint and Docket misspell this Defendant's name as "Dr. Remeinena." We will refer to the correct spelling used in the caption.

("Woodbourne") for his back, knee, high blood pressure, and asthma were wrongly discontinued after his transfer to Mid-State Correctional Facility ("Mid-State"). *Id*. at p. 3. Defendants now move for Summary Judgment pursuant to Fed. R. Civ. P. 56, (Dkt. No. 42), which Plaintiff opposes (Dkt. No. 48). For the reasons that follow, it is recommended that the Defendants' Motion be **granted** and the Complaint **dismissed**.

## I. FACTS

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not, in their entirety, specifically countered nor opposed by Plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>" (emphasis in original)). In any event, most, if not all, of the material facts are not in dispute, but rather, the issue is whether those facts give rise to constitutional violations.

Plaintiff was transferred from Woodbourne to Mid-State on June 28, 2005, where Defendant Dr. Ramineni was employed. Dkt. No. 42, Defs.' Mot. for Summ. J., Defs.' 7.1 Statement, at ¶ 1. During Plaintiff's first visit with Dr. Ramineni on August 18, 2005, he complained of pain in his lower back and right knee, although an examination revealed no swelling, discoloration, or any other signs of injury to his back or knee. *Id*. at ¶ 8. Dr. Ramineni prescribed Naprosyn, an anti-inflammatory drug. *Id*. On September 14, 2005, Plaintiff again complained of back and knee pain. Again, Dr. Ramineni found no inflammation nor swelling. *Id*. at ¶ 10. Plaintiff requested a magnetic resonance imaging (MRI) and a transcutaneous electrical nerve stimulator (TENS) unit, but Dr. Ramineni denied those requests as medically unnecessary. *Id*. at ¶ 11. Plaintiff's final meeting with Dr. Ramineni was on November 14, 2005. Plaintiff complained of pain in his left knee

for which he was prescribed Motrin. *Id.* at ¶ 12.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a

summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15,

1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In the case at bar, Plaintiff has not made any specific allegations against Defendants Perlman and Goord, nor has he advanced a theory of supervisory liability against them. *See generally* Compl. Because his Complaint is completely devoid of any mention of Defendants Perlman and Goord beyond listing them as Defendants, it is recommended that the Complaint be **dismissed** as to these Defendants.[2]

### C. Eighth Amendment Claim

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970

---

[2] In addition, it appears that Plaintiff may not have intended to file this action against Defendants Perlman and Goord. In his Statement of Undisputed Material Facts, included in his Opposition to the Defendants' Motion for Summary Judgment, Plaintiff states "[t]he plaintiff,s [sic] only file [sic] a civil action against the defendant Dr. Ramineni." *See* Dkt. No. 48, Pl.'s Opp. to Defs.' Mot. for Summ. J., at p. 1.

F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d at 66). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v.*

*Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

1. *Serious Medical Need*

Plaintiff alleges that prior to his arrival at Mid-State, he sustained injuries to his lower back and knee and suffered from asthma and high blood pressure, and that because the treatment he received at Woodbourne was discontinued upon his arrival at Mid-State, he suffered "swelling of the knee, continued lost [sic] of sleep, joint swelling and discoloration in the lower back area, and knee." Compl. at Statement of Facts, ¶¶ 2-4. Plaintiff also alleges that while at Mid-State he had problems going to the bathroom and may have had hemorrhoids. Compl. at [unnumbered] p. 4.

Plaintiff's Ambulatory Health Record (AHR) reflects that he made several complaints of pain in his knee and back, but provides no additional evidence of any concrete injury beyond a pulled groin muscle he suffered while playing basketball and Dr. Ramineni's diagnosis of a sprained left knee. *See* Defs.' 7.1 Statement, Ex. A, AHR. Plaintiff has failed to allege any specific injury, serious or otherwise, with respect to his back. Plaintiff's indication that he had trouble going to the bathroom and suffered from hemorrhoids is supported by one entry in his AHR noting that he was constipated and possibly had hemorrhoids. AHR, entry dated Oct. 24, 2005. However, these conditions, without any other evidence or allegation as to their severity, are not sufficiently serious to establish an Eighth Amendment claim. *See, e.g., Cabassa v. Gummerson,* 2006 WL 1559215, at *9-10 (N.D.N.Y. Mar. 30, 2006) (evidence that plaintiff may have suffered from hemorrhoids, without more, did not establish a viable Eighth Amendment claim); *see also Kendall v. Kittles*, 2004 WL 1752818, at *6 (S.D.N.Y Aug. 4, 2004) (stating hemorrhoids "are a minor health issue, far removed from the category of medical conditions that have been deemed 'sufficiently serious' by

other courts.")).

With respect to Plaintiff's knee, two referral orders indicate that a MRI from August 2004 "showed possible small partial tear of [Plaintiff's] ACL [anterior cruciate ligament]," and that after a consultation with orthopedics on December 6, 2005, Plaintiff was scheduled to have arthoscopic surgery on his left knee[3] and possibly ACL reconstruction. Defs.' 7.1 Statement, Ex. C, Referrals, dated Nov. 28, Dec. 6, 2005, & Jan. 10, Feb. 23, 2006 & CORC Response, dated Mar. 1, 2006 (stating "CORC also notes that on 2/27/06 the greivant was referred for arthroscopic [sic] knee surgery, which is pending approval.").[4]

However, even assuming that Plaintiff suffered from a small tear in his ACL, generally speaking, "knee injuries have been [held] insufficient to trigger Eighth Amendment protection and support a deliberate indifference claim." *Guarneri v. Bates*, 2008 WL 686809, at *7 (N.D.N.Y. Mar. 10, 2008) (internal quotation marks and citations omitted). Furthermore, in this case, Plaintiff was able to walk and apparently play basketball until he pulled a groin muscle on July 8, 2005. AHR, entries dated July 8, 2005 (noting Plaintiff pulled his groin playing basketball) & Sept. 9, 2005 (noting Plaintiff's ability to walk without any pain). In addition, Dr. Ramineni noted that there was no inflammation nor restricted movement in Plaintiff's left knee. *Id*. at entry dated Nov. 14, 2005. Thus, Plaintiff's allegation that he suffered a knee injury in and of itself does not constitute a serious medical need. *See Williamson v. Goord*, 2006 WL 1977438, at *14 & 16 (N.D.N.Y. July 11, 2006)

---

[3] We note that it is not altogether clear which knee Plaintiff asserts was not properly treated. In his Complaint, Plaintiff refers nonspecifically to his knee, while his AHR entries make references to problems in both the left and right knees. *See* AHR, entries dated Aug. 18, Nov. 7, & Nov.14, 2005. In any event, our analysis is the same.

[4] There is no record of Plaintiff's surgery in the AHR or in any other submissions to the Court, however, Plaintiff indicated in his Opposition to the Defendants' Motion for Summary Judgment that "[i]t took [him] two or three grievances to see another doctor and have the knee surgery done." Dkt. No. 48, Pl.'s Opp. to Defs.' Mot. for Summ. J., Pl.'s Decl., at ¶¶ 10 & 18. Thus, it appears that at some point after February 23, 2006, Plaintiff underwent arthoscopic knee surgery.

(partially torn ACL in conjunction with other knee problems did not establish Eighth Amendment claim); *see also Moody v. Pickles,* 2006 WL 2645124, at *6-7 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion," which did not render plaintiff immobile, was not a serious medical need).

## 2. *Deliberate Indifference*

Even assuming, *arguendo*, that Plaintiff met his burden on the first prong, he has failed to establish that Dr. Ramineni was deliberately indifferent to his medical needs. Plaintiff claims that upon being transferred from Woodbourne to Mid-State, the treatment he had been receiving for his back and left knee was arbitrarily discontinued. Plaintiff first visited with Dr. Ramineni on August 18, 2005, complaining of pain in his lower back and right knee.[5] AHR, at entry dated Aug. 18, 2005. Dr. Ramineni observed no inflammation nor swelling in his knee and prescribed Naprosyn, an anti-inflammatory drug. *Id.*; Defs.' Mot. for Summ. J., Subbarao Ramineni, M.D., Decl., dated Dec. 20, 2007, at ¶ 5. Plaintiff saw Dr. Ramineni on September 14, 2005, again complaining of back and knee pain and requesting a MRI, a referral to orthopedics, a TENS unit, and physical therapy. AHR, at entry dated Sept. 14, 2005. Dr. Ramineni noted Plaintiff was able to walk without any pain and showed no objective signs of swelling nor inflammation, and denied Plaintiff's requests for a MRI and TENS unit because they were "not medically indicated." *Id*. With respect to Plaintiff's request for physical therapy, Dr. Ramineni noted he had received such treatment in the past but it did not help. *Id.*; Ramineni Decl. at ¶ 8.

November 14, 2005, was the date of Plaintiff's last meeting with Dr. Ramineni. Ramineni Decl. at ¶ 10. Plaintiff complained of pain in his left knee, although Dr. Ramineni observed no

---

[5] Plaintiff's AHR indicates that he was a "no show" for an appointment with Dr. Ramineni scheduled for July 21, 2005. AHR, entry dated July 21, 2005.

inflammation nor restricted movement. AHR, at entry dated Nov. 14, 2005. Dr. Ramineni diagnosed Plaintiff with a sprained knee and prescribed Motrin. *Id.*

Considering this record, there is no indication that Dr. Ramineni displayed anything close to the criminal recklessness required under the Eighth Amendment subjective prong. In order to establish deliberate indifference, an individual must "'know of and disregard an excessive risk to inmate health or safety.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000) (quoting *Chance v. Armstrong*,143 F.3d at 702 & *Farmer v. Brennan*, 511 U.S. at 837). Although Dr. Ramineni denied Plaintiff's requests for physical therapy, a MRI, and x-ray, those denials were based on his opinion that they were not medically necessary as Plaintiff showed no objective signs of serious injury such as swelling, inflammation, nor inhibited ambulation. Furthermore, Dr. Ramineni did not disregard Plaintiff's medical needs, but rather, prescribed him Naprosyn and Motrin for the pain he complained of in his knee.

Thus, Plaintiff has failed to establish that Dr. Ramineni displayed a deliberate indifference towards his medical needs. For the reasons stated above, this claim should be **dismissed.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Plaintiff's Complaint (Dkt. No. 1) be **dismissed** in its entirety and Defendants' Motion for Summary Judgment **granted**; and it is further

**ORDERED**, that in the event the District Judge adopts this recommendation, Plaintiff's Motion to Compel (Dkt. No. 44) is **denied** as moot; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  August 4, 2008
         Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge